**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Iris Diana Chavez, | No. CV-20-00403-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Iris Diana Chavez ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner"). (Doc. 1.) This matter was referred to Magistrate Judge Bruce G. Macdonald for Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1) and LR Civ. 72.1 and 72.2. (Doc. 14.) On February 18, 2022, Magistrate Judge Macdonald issued his R&R finding that the Administrative Law Judge did not err and recommending that this Court affirm the Commissioner's decision. (Doc. 36 at 26.) Plaintiff objects to Judge Macdonald's recommendation. (Doc. 30 at 7–10.) As explained below, the Court **SUSTAINS** Plaintiff's objection. The Commissioner's decision will be reversed and the matter is remanded for the immediate calculation and payment of benefits.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed an initial application for Title XVI Supplemental Security Income on September 12, 2017, alleging disability beginning February 10, 2015. (*See* Administrative Record ("AR") at 41, 43.) Plaintiff alleged disability due to "major depressive disorder

with severe psychotic features, medication induced movement disorder, anxiety disorder, schizophrenia, bipolar depression, schizoaffective disorder type depressed, post-traumatic stress disorder ("PTSD"), and metabolic syndrome." (*Id.*)

On January 9, 2020, the ALJ's issued his decision and concluded that Plaintiff was not disabled pursuant to the Social Security Act ("SSA"). (AR 38–53.) To be found disabled and qualified for Disability Insurance Benefits or Supplemental Security Income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a) & 1382(a)(3)(A). The same five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140–142 (1987). The five-step process requires the claimant to show (1) she has not worked since the alleged disability onset date, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from doing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the inquiry ends. If the claimant satisfies her burden through step four, the burden shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *see also Bowen*, 482 U.S. at 146 n. 5 (describing shifting burden at step five).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. (AR 43.) At step two, the ALJ found Plaintiff had "severe"[1] impairments including schizoaffective disorder, generalized anxiety disorder, and delusional disorder. (AR 43.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R., Pt 404, Subpt. P, App. 1. (AR 44.) Between steps three and four, the ALJ

---

[1] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

determined Plaintiff had the Residual Functional Capacity[2] ("RFC"), "to perform full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks. She can work in jobs that do not have high stress, such as production quotas or factory-type of stress, and deadlines. She can have occasional interaction with the public. She is capable of working in jobs where she could work relatively independently and not part of a team." (AR 46.) At step five, based on the RFC and the testimony of the vocational expert ("VE"), the ALJ concluded Plaintiff could work as a cleaner or housekeeper. (AR 52.) Accordingly, the ALJ concluded that Plaintiff was not disabled since September 12, 2017, the date she filed her application. (AR 53.) Plaintiff requested review before the Appeals Council, which was denied on July 24, 2020, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–10.) Thereafter, Plaintiff timely filed the instant action. (Doc. 1.)

Judge Macdonald issued his R&R and found that the ALJ did not err. (*See* Doc. 36.) First, the R&R found that the ALJ provided legally sufficient reasons for discounting the opinions of treating physicians NP Remien and Dr. Ross. (Doc. 36 at 19–23.) Second, the R&R determined that the ALJ properly discounted Chavez's symptom testimony. (Doc. 36 at 23–26.) Plaintiff objects to the R&R and asserts that the ALJ failed to provide legally sufficient reasons to discount both the treating physicians' opinions and the symptom testimony. (Doc. 37.) As such, the Plaintiff requests that if this Court finds the ALJ committed legal error, then the matter should be remanded with direction for award of benefits, or in the alternative, remanded for further proceedings. (Doc. 37 at 1.)

**II.     STANDARD OF REVIEW**

**A.  Review of the Report and Recommendation**

In reviewing a Magistrate Judge's R&R, "[a] judge of the court shall make a de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. §

---

[2] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). A plaintiff's residual functional capacity is what they can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5–7 (9th Cir. 1989).

636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

### B. Review of the ALJ's Decision

An ALJ's decision may be reversed only when it is not supported by substantial evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation and citation omitted). "An error is harmless if it is inconsequential to the ultimate nondisability determination[.]" *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2015) (internal quotation and citation omitted). Put differently, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1004, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted), *superseded by regulation on other grounds*.

## III. ANALYSIS

### A. Medical Source Opinions

Plaintiff first argues that the ALJ erred in his evaluation of medical source opinions and improperly rejected the opinions. (Doc. 37 at 2.) Further, such error was not harmless as both medical opinions supported Plaintiff's disability. (*Id.*) Moreover, Plaintiff suggests that the "specific and legitimate" standard for rejecting a treating physician's opinion survived the Social Security Administration's ("SSA") 2017 change of regulations governing the weight given to such medical evidence. (*Id.* at 5 (noting that the applicable standard is an "unsettled question").) The Commissioner contends that the ALJ properly assessed the medical source opinions and disputes that the specific and legitimate standard is still applicable after the 2017 SSA regulations went into effect. (Doc. 38 at 3 n. 1.)

#### 1. Legal Standard – 2017 Revised Regulations

For disability benefits claims filed after March 27, 2017, including the application

in the present case,[3] new SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c.[4] Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other relevant factors. *Id.* The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how he considered both supportability and consistency. *Id.*

Although SSA regulations control how an ALJ must determine the weight of a medical source opinion, the Ninth Circuit has historically determined how an ALJ must articulate those determinations of weight. *See Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Before March 27, 2017, the SSA regulations assigned a starting weight to each medical opinion, and if an ALJ declined to give that weight, the Ninth Circuit required the ALJ to articulate his decision using *specific and legitimate reasons*. *Id.* (emphasis added). The new SSA regulations no longer assign a starting weight to each opinion, and in assigning weight to each opinion, the ALJ must evaluate the opinion's persuasiveness. 20 C.F.R. § 416.920c. These new regulations do not contain an express articulation standard comparable to the specific and legitimate standard set forth in *Murray* and the Ninth Circuit has yet to rule whether the specific and legitimate standard still applies. Thus, the applicable standard is an unsettled question.

Judges sitting on district courts within the Ninth Circuit have issued rulings on both sides of the issue. The Western District of Washington has upheld the use of the specific and legitimate standard, finding that the new regulations do not affect how an ALJ weighs

---

[3] Plaintiff filed her claim on September 12, 2017.
[4] The R&R cites to 20 C.F.R. § 404.1520c(a)–(b), which is the parallel regulation governing Social Security Disability Insurance benefits claims. (*See* R&R at 21.) Where, as here, the ALJ considers Supplemental Security Income benefits, the governing regulation is 20 C.F.R. § 416.920c, *et. seq.* For purposes here, the substantive language of both regulations, with respect to how an ALJ must determine the weight of a medical source opinion, are the same.

an opinion. *Kathleen G. v. Commr. of Soc. Sec. Admin.*, 2020 U.S. Dist. LEXIS 210471 at * 7-8 (W.D. Wash. Nov. 10, 2020). Courts in the Southern and Eastern Districts of California have ruled to the contrary, determining that the new regulations supersede prior case law that applied the specific and legitimate standard. *See, e.g., Kathy Jean T. v. Saul*, 2021 U.S. Dist. LEXIS 100698 at *14-15 (S.D. Cal. May 27, 2021); *Agans v. Saul*, 2021 U.S. Dist. LEXIS 71471 at *14-19 (E.D. Cal. Apr. 12, 2021). As such, these courts did not look for specific and legitimate reasons for an ALJ's rejection of a medical opinion. *Id.* In *Agans*, the court noted that the SSA may override the Ninth Circuit's interpretations of the Act, and where no "judicial precedent hold[s] that the statute unambiguously forecloses the agency's interpretation," the SSA's interpretation of regulations is entitled to Chevron deference. *Agans*, 2021 U.S. Dist. LEXIS 71471 at *19; *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Orders from the District of Arizona have found that the specific and legitimate standard does not apply after the change in SSA regulations.[5] In sum, Arizona district courts have deferred to the SSA's 2017 regulations. This Court will do the same. Accordingly, here the Court must determine whether the ALJ articulated a finding of persuasiveness with legally sufficient, substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (a court may set aside an ALJ's decision if it is based on insubstantial evidence or is based on legal error).

**2.  Medical Opinions**

Treating providers, Nurse Practitioner Jami Remien ("NP Remien"), PMHNP-BC, and Dr. Robin Ross, M.D. ("Dr. Ross"), submitted Medical Assessments[6] ("Medical Assessments") on Plaintiff's behalf; NP Remien submitted her assessment in January 2018; and Dr. Ross submitted his in June 2019. (*See* AR 1052–55; AR 1190–93.)

NP Remien opined, *inter alia*, that Plaintiff had severe limitations in three particular

---

[5] *See, e.g., Chacon v. Comm'r of Soc. Sec. Admin.*, 2021 U.S. Dist. LEXIS 217722 at * 16-17 (D. Ariz. Nov. 9, 2021); *Pickerill v. Comm'r of Soc. Sec. Admin.*, 2021 U.S. Dist. LEXIS 238636 at *20-21 (D. Ariz. Dec. 13, 2021); *Palmer v. Comm'r of Soc. Sec.*, No. CV-20-01858-PHX-GMS, slip op. at 6 (D. Ariz. Jan. 11, 2022).
[6] The forms are entitled, "Medical Assessment of the Patient's Ability to Perform Work Related Activity."

areas. For example, in the area of sustained concentration and persistence, Plaintiff had severe limits in her ability to carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 1053. Regarding social interactions, NP Remien found Plaintiff to have severe limitations on her ability to interact appropriately with the general public; accept-instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* at 1054. Regarding adaptation, NP Remien noted that Plaintiff had severe limits in her ability to respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id.*

Similarly, Dr. Ross opined that Plaintiff had moderate limitations in several areas including: understanding and memory; sustained concentration and persistence; ability to carry out detailed instructions, and simple one or two-step instruction; and ability to ask simple questions or request assistance. *Id.* at 1190–93. In the area of adaptation, Dr. Ross opined that Plaintiff had moderately severe limits on her ability to travel to unfamiliar places or use public transportation. *Id*. Dr. Ross further opined that Plaintiff had severe limitations in one area: her ability to interact appropriately with the general public. *Id.* at 1192.

### i. NP Remien

NP Remien treated Plaintiff between 2017 and 2018. (*See* AR 1047; AR 1093; AR 1120.) In discounting NP Remien's medical opinion, the ALJ reasoned:

> [NP Remien's] opinion is not fully supported by treatment records. For example, appointment notes in January 2018 indicated that the claimant was calm and cooperative. Mood

- 7 -

>was euthymic. Stream of thought was unremarkable. The claimant was being seen only on an eight-week basis. She was benefitting from therapy with pharmacological management. (Exhibit 12F, pp. 39-40.) Furthermore, GAF in August 2018 was 61, indicating mild symptoms or some difficulty in functioning. (Exhibit 12F, p. 8.) This is inconsistent with severe functional limitations. In addition, psychological expert Dr. Kent Layton pointed out in his testimony that he did not think an individual with the severity of symptoms reported by Nurse Practitioner Remien could care for a child. The claimant testified that one of her children still lives with her.

(AR 49.)

Plaintiff argues the ALJ erred in three ways: (1) the ALJ failed to articulate how he considered the "supportability" and "consistency" factors for the medical opinions in making his determination under 20 C.F.R. § 416.920c(a)–(b); (2) the ALJ failed to demonstrate inconsistencies with regards to Plaintiff's work capacities; and (3) the ALJ impermissibly assigned more persuasive value to reviewers who did not examine Plaintiff. (Doc. 37 at 6–8.)

Inconsistencies between a treating physician's opinion and her contemporaneous entries in the medical record can reasonably be interpreted as indicating the opinion overstated the Plaintiff's limitations. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). The ALJ's first rationale points to an inconsistency between the treatment notes, (AR 194–95 ("Exhibit 12F")), and the Medical Assessment, each completed within 24-hours of the other.[7] The treatment notes indicate Plaintiff's positive, or otherwise unremarkable, demeanor, mood, and stream of thought and her progression with pharmacological management. The ALJ did not explain how these isolated comments in the treatment notes overstated the Plaintiff's work-related limitations. While the R&R notes that the attributes in the treatment notes were consistent with Plaintiff's other encounters with NP Remien, (*See* Doc. 36 at 21), this was not a consideration articulated in the ALJ's decision.

---

[7] The treatment note is dated January 23, 2018, (AR 194–95), and NP Remien's Medical Assessment is dated January 24, 2018. (AR 1052–55.)

The ALJ's second rationale, simply states, "[t]he claimant was being seen only on an eight-week basis." (AR 49.) The R&R interprets this sentence broadly. (Doc. 36 at 22 ("As such, [NP Remien] did not have a relationship with [Plaintiff] that could provide a longitudinal picture through her alleged onset date and to the present.")). If the ALJ intended to explain that the medical opinion was inconsistent or unsupported by the longitudinal medical records because NP Remien only treated Plaintiff for eight weeks, then he must do so. 20 C.F.R. § 416.920c(b)(2) ("[W]e will *explain* how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination or decision.") (emphasis added). Even if this was the ALJ's intent, the AR demonstrates that the relationship between Plaintiff and NP Remien was longer than eight weeks. (AR 1047, 1120 (treatment notes dated September 17, 2017); AR 194–95 (treatment notes dated January 23, 2018).)

The ALJ's third rationale, that global assessments of functioning ("GAF") scores from August 2018 indicated only mild symptoms or some difficulty in functioning, raise another inconsistency in the Medical Assessment. To the extent Plaintiff objects to the ALJ's reliance of GAF scores, the ALJ qualified his consideration of such scores. (*See* AR 49 ("GAF assessments are not correlated to the regulatory definition of disability, have not been shown to be objective, and cannot be directly used to assess disability. They have been considered as part of the overall evidence of the claimant's functioning and have been addressed in the residual functional capacity, which limits the claimant to simple work and limits social interaction.").) As such, the ALJ properly observed the GAF was "inconsistent with severe functional limitations [in NP Remien's Medical Assessment]."  Importantly, this rationale is the only one to address Plaintiff's work-related functioning.

The ALJ's fourth rationale cited psychology expert Dr. Kent Layton's testimony, specifically, the following exchange:

> [ALJ]: Okay. Any inconsistencies in the record that we need to discuss, Dr. [Layton]?
>
> [Dr. Layton]: That was pretty consistent […]

> [ALJ]: Yeah. So 11F, her nurse practitioner has all sorts of severe limitations.
>
> [Dr. Layton]: Yeah, I saw that. She had marked for remembering detail, concentration marked, social marked, and then that's 2018. I did see that, but I don't think that person could take care of a child with that – with those. The kid could – the child would wander off.

(AR 81–82; *See* AR 49) The R&R reasoned that Dr. Layton didn't believe that an individual with the limitations reported by NP Remien could care for a child. (AR 82.) Moreover, the R&R found, "[o]ther records confirm that [Plaintiff] takes her daughter to school by herself and cares for her independently." (Doc. 36 at 22.) The ALJ's reliance is particularly concerning where Dr. Layton later acknowledged that Plaintiff received help in caring for her daughter, (AR 87), and where Plaintiff testified that she wasn't active in her daughter's school activities (AR 68–69).

Lastly, the ALJ failed to address the *consistencies* in NP Remien and Dr. Ross' opinions. Both provided similar opinions on Plaintiff's ability to perform work place activities: both indicated severe limitations to interact appropriately with the general public, (AR 1052, 1192); both indicated at least moderate limitations in Plaintiff's ability to remember locations and work-like procedures; ask simple questions or request assistance and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; maintain attention and concentration without interruptions from psychologically-based symptoms; both opined that as a result of her impairments, Plaintiff would be expected to miss work at least three days per month based on her ability to perform work-related activities; and both indicated these limitations were expected to last 12 months or longer (AR 1055,1193.)

Although ALJs no longer "weigh" medical opinions, they must articulate how persuasive they find the medical opinions and explain their reasoning. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(c). Because the ALJ failed to properly consider NP Remien's opinion, he erred.

### ii. Dr. Ross

In 2018, Plaintiff began receiving services through COPE Community Services. (AR 1265–1371, 1398–1443.) At the same time, Dr. Ross began treating Plaintiff. In discounting Dr. Ross's medical opinion, the ALJ reasoned:

> The claimant had been enrolled with COPE for a year. (Exhibit 18F.) Severity of symptoms is not fully supported by contemporaneous treatment notes. For example, Dr. Ross has reported that the claimant never appeared psychotic during appointments with her. She never appeared to be responding to internal stimuli. She never had a thought disorder that was displayed during communication with Dr. Ross. Dr. Ross went on to report that she was unclear if the claimant had a personality disorder or actual psychotic disorder. The fact that no medication worked except clonazepam made her wonder if there was true psychosis. (Exhibit 19F, p. 28.) This is consistent with the prior findings of Dr. Diane Stein who found psychosis to be substance-induced. Primary diagnoses were substance-induced (synthetic marijuana - Spice) psychotic disorder in full remission, depressive disorder in partial remission, and anxiety disorder. (Exhibit 16F.)

(AR 50.)

In objection, Plaintiff argues the R&R is insufficient, and merely "repeats observations that [Plaintiff] did not appear psychotic during time-limited treatment visits and Dr. Ross's consideration of a different diagnoses (but not different limitations)." (Doc. 37 at 8.)

The ALJ references Dr. Ross's observations from November 2018. (AR 1293.) In June 2019, contemporaneously with his June 2019 Medical Assessment, he submitted a letter indicating Plaintiff's diagnoses as schizoaffective disorder, depressive type, generalized anxiety disorder, delusional disorder, and insomnia due to other mental disorder. (AR 1265.) He further indicated, "[Plaintiff's] diagnoses are chronic and she will need to continue to manage her symptoms with medication and therapeutic services." (*Id.*) Rather than comparing Dr. Ross's 2018 treatment notes to this later-in-time letter, the ALJ compared his notes to Dr. Stein's evaluation from 2016, over two years earlier. (AR 1194–

95.) The Court cannot affirm the ALJ's opinion simply by isolating a "specific quantum of supporting evidence" out of a mixed and complex record, about which the ALJ failed to make comprehensive findings. *Orn*, 495 F.3d at 630. Moreover, it is unclear from the ALJ's rationale whether he intended to undermine the severity of Plaintiff's symptoms or Dr. Ross' diagnoses. The Ninth Circuit clearly prohibits the latter. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (explaining an ALJ may not substitute his layperson observations for opinions of claimant's treating physicians). The ALJ erred by ignoring contrary medical evidence and focusing instead on the particular evidence which supported his finding of non-persuasiveness.

### B. Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation omitted). If the claimant has provided objective medical evidence and if there is no evidence of malingering, as here, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Specifically, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (internal citation and quotation omitted).

Plaintiff argues that the ALJ failed to identify specific reported symptoms and failed to identify specific evidence in the medical record to justify rejection of those symptoms. (Doc. 37 at 8.) The ALJ, Plaintiff contends, instead relied upon general characterizations of the medical record to discount the symptom testimony. (*Id.* at 9.)

As an initial matter, the ALJ failed to identify any specific reported symptoms nor

1    did the ALJ link the characterization of the medical record to any specific symptom.
2    Instead, the ALJ spoke generally to Plaintiff's medication noncompliance, benefits of
3    medication management and her daily activities. (AR 47–49.) By not identifying specific
4    reported systems, the ALJ erred. *See Lambert*, 980 F.3d at 1277 (finding insufficient the
5    ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely
6    consistent with the objective medical evidence").

7    Evidence of medical treatment successfully relieving symptoms can undermine a
8    claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, the
9    ALJ noted that Plaintiff showed improvement when she obtained treatment in 2016 and
10   2017. (AR 48.) Conversely, the ALJ identified an instance where medication
11   noncompliance resulted in crisis. Specifically, the ALJ referenced Plaintiff's April 2019
12   hospitalization, noting: "[t]he [Plaintiff] reported having had a party and a breakdown.
13   Substance abuse in [sic] indicated tobacco, THC, opiates, and cocaine with THC and
14   cocaine having been used 'years ago.' (Exhibit 17F, p. 20-21, 24, 29.) The [Plaintiff] had
15   not been compliant with medication." (AR 49.) In response, Plaintiff indicates that the ALJ
16   improperly disregarded the symptom testimony, especially when the agency's own medical
17   expert testified that noncompliance is common in persons with Plaintiff's mental
18   impairments. (Doc. 37 at 9; AR 88-89.) Similarly, Plaintiff indicated that her family
19   consistently reminded her to take her medications because she would forget otherwise. (AR
20   89.) Because the ALJ disregarded this evidence in summarizing Plaintiff's medical
21   noncompliance, he erred. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1018 n. 24 (9th Cir. 2014)
22   ("[W]e do not punish the mentally ill for occasionally going off their medication when the
23   record affords compelling reason to view such departures from prescribed treatment as part
24   of claimants' underlying mental afflictions.")

25   A claimant's reported daily activities can form the basis for an adverse credibility
26   determination if they consist of activities that contradict the claimant's "other testimony"
27   or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair*
28   *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse

credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"). Here, Plaintiff's activities included providing childcare to her then nine-year-old daughter, driving, shopping, and handling money. (AR 51.) Plaintiff suggests that the ALJ failed to connect these activities to any reason to disbelieve her reported symptoms. (Doc. 37 at 10.) The Court agrees. The ALJ did not link the specific activities to a work setting, and as such, he did not provide specific, clear, or convincing reasons to reject Plaintiff's symptom testimony. Accordingly, the reasons cited by the ALJ in support of discounting Plaintiff's testimony are not clear and convincing.

## IV.     CREDIT-AS-TRUE RULE

Plaintiff asks that the Court apply the credit-as-true rule, which would result in a remand of Plaintiff's case for calculation and payment of benefits rather than for further proceedings. (Doc. 37 at 10–11.) "[W]hether to remand a case for additional evidence, or simply award benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion…").

The credit-as-true rule applies if three elements are present. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Additional proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*. 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the Court concludes that the first requirement has been satisfied because the ALJ rejected Plaintiff's symptom testimony and NP Remien and Dr. Ross' medical opinions without legally valid reasons. After examining the record, the Court finds no outstanding issues of fact to be resolved through further proceedings. At the administrative hearing, Plaintiff testified that because of her condition, she is unable to work in housekeeping. (AR 93–94.) At the same hearing, the VE testified that housekeeping was the only job available to Plaintiff. (AR 93.) Later, the VE opined that, if the ALJ applied limitations set forth in Plaintiff's hypothetical (which were based on NP Remien and Dr. Ross' medical opinions taken as true), then the ALJ would be required to find that Plaintiff is disabled. (AR 95–97.) Further, the Court does not find any material evidence in the record that creates serious doubt that Plaintiff is in fact disabled. Therefore, based on the record, the Court finds it inappropriate to remand the case for further proceedings. The Court will remand the case for an immediate calculation and payment of benefits.

## V. ORDER

**IT IS ORDERED REVERSING** the decision of the Commissioner of Social Security and **REMANDING** this case to the Commissioner for an immediate calculation and payment of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court terminate this action and enter judgment accordingly.

Dated this 30th day of March, 2022.

_____
Honorable John C. Hinderaker
United States District Judge